MASON W. KELLOGG ET AL. *v.* ROBERT O. KELLOGG ET AL.

MARRIED WOMAN. *Estate, whether governed by principles of equity or statute. Deed of trust. Case in judgment.*

The last will and testament of H. devised and bequeathed to trustees certain real and personal property to "be held for the sole, separate, and exclusive use of R. W., wife of J. W., and the children he now has, including a son by his first wife, or may have by any future wife, it being hereby intended that the said R. W. and the children of said J. W., now *in esse* or which may hereafter be born, shall be equitable tenants in common, in fee of all said property, provided, that the rents, profits, etc., of said property shall, during the joint lives of said J. W. and his wife, R. W., be held for the sole, separate, and exclusive use of said R. W., and she shall be authorized to receive the same absolutely, and be subject to her control and disposition as if she were a *feme sole*." Under this will Mrs K., a daughter of J. W. and R. W., inherited a certain tract of land, upon which, on the 30th of August, 1880, she and her husband executed jointly a deed of trust to secure a promissory note given by them for money borrowed and used for purposes for which the statutes of this State did not authorize her to borrow money. She died in 1881, and default having been made in payment of the note, a bill was filed to foreclose the deed of trust. *Held*, that Mrs. K.'s estate in the land thus inherited was not an equitable estate and governed by the general principles of equity in relation to the estates of married women, but was an estate subject to our statutory married woman's law, and as such was not bound by the deed of trust, except as to that part inherited by her husband after her death.

APPEAL from the Chancery Court of Yazoo County.

HON. E. G. PEYTON, Chancellor.

On the 30th of August, 1880, Mrs. Lazinka A. Kellogg and her husband, Seth H. Kellogg, gave their promissory note for four thousand two hundred and seventy-one dollars and two cents to Robert O. Kellogg, and to secure payment of the same executed jointly a deed of trust to Edward Drenning, as trustee, upon a tract of land belonging to Mrs. Kellogg, and known as "Choctaw Plantation." On the 25th of September, 1881, Mrs. Kellogg died intestate, leaving surviving her her husband and several children.

Default having been made in the payment of the note given to Robert O. Kellogg, the trustee had advertised for sale under the deed of trust the land thereby conveyed, when, on the 20th of March, 1884, Mason W. Kellogg and four others, all minor chil-

dren of Lazinka A. Kellogg, deceased, by their guardian and next friend, S. H. Kellogg, filed the bill in this case against Drenning, the trustee, and Robert O. Kellogg, the *cestui que trust*, in the deed of trust, praying for an injunction against the sale of the land and for cancellation of the trust-deed.    The bill alleges that the money for which the note of Lazinka A. Kellogg, deceased, and Seth H. Kellogg, to Robert O. Kellogg was given was not received by Mrs. Kellogg, nor used for any of the purposes for which she was authorized by statute to borrow money, but that it was borrowed and used for the sole benefit of Mason B. Kellogg, a brother of Seth H. Kellogg; and it is charged in the bill that the note was a mere nullity, and the deed of trust, therefore, a mere cloud upon the title of complainants to the property therein embraced.    Robert O. Kellogg answered, denying that the money lent on the note referred to was used as stated in the bill, and averring that it was borrowed and used for the purposes (specifying them) for which the statute in relation to the rights of married women authorized a married woman to borrow money.

Subsequently Robert O. Kellogg filed an amended answer, which he made a cross-bill, again denying the allegations of the bill as to the consideration of the note, and averring that the land conveyed by the deed of trust was held by Mrs. Kellogg in her lifetime as an equitable estate not subject to the statute of this State in relation to the property of married women ; and that she was capable of dealing with such land as a *feme sole*, in accordance with the principles governing the estates of married women in equity.    The answer sets out substantially the provisions of the declaration or deed of trust under which Mrs. Kellogg held the land, and refers to a copy thereof as "Exhibit No. 1." This answer and cross-bill further states that upon the death of Mrs. Kellogg her husband, Seth H. Kellogg, was one of six heirs left by her, and that he having joined in the deed of trust, his one-sixth interest in the land conveyed is bound by the deed, even if the other interests therein be not bound by the conveyance.    The prayer of the cross-bill is that the whole tract of land be subjected to payment of amount due on the note, or at least that the one-

sixth interest of Seth H. Kellogg therein be so subjected.    There
was attached to this cross-bill, as " Exhibit No. 1 " thereto, a copy
of a deed of trust, executed on the 10th of March, 1841, by
Harry R. W. Hill and his wife to James J. B. White and Isaac
H. Hilliard, as trustees, and conveying certain real and personal
property therein described.    This deed provided that the trustees
should pay off out of the proceeds of the crops grown on the land
conveyed certain specified debts, and " that the balance of the
crops over and above what may be appropriated as above (after de-
ducting the necessary expenses of the plantation), shall be held for
the sole, separate, and exclusive use of Mrs. Rebecca J. White,
wife of said James J. B. White, and all and every the child or
children of said James J. B. White, including his son, Samuel
Warren White, by his first wife, as well as all and every the child
or children which he now has, or may at any time hereafter have
by his present or any future wife, it being hereby intended that the
said Rebecca J. White, and the said children of said James J. B.
White, now in issue [esse?], or which may hereafter be born,
shall be equitable tenants in common in fee of all said property.
Provided, also, that the rents, profits, crops, etc., of said property
shall, during the joint lives of said James J. B. White and his
said wife, Rebecca, be held for the sole, separate, and exclusive use
of said Rebecca J., and she shall be authorized to receive the same
absolutely, and be subject to her own control and disposition, in
the same manner as if she were a *feme sole;* and in case of the
death of any of said children without issue living, and before the
age of twenty-one, the share of the one dying shall go to the sur-
viving child or children ; and in the event of all the children
dying without issue living at the time of their death, and before
twenty-one, then the whole of the property or estate, or the shares
which said children would be entitled to, shall survive to and vest
in the said Rebecca J. White and her heirs for her sole, separate,
and exclusive use ; provided also that if the said Rebecca J. White
should die without issue living at the time of her death, the prop-
erty herein conveyed, or which she may be in any wise entitled to
under this deed (except the crops, rents, etc.), shall vest in the

right heirs of the said James J. B. White and their heirs forever."

The complainants answered the cross-bill through their guardian and next friend, and he answered individually, which answer was to the effect that Seth H. Kellogg after the death of his wife had conveyed his interest in the land to the complainants, his children, and that if an equitable trust estate was created by the deed above quoted from it had ceased to be such before the execution of the trust-deed in favor of Robert C. Kellogg, because the lands embraced in that estate had been partitioned between Mrs. Kellogg and the other heirs thereto, and was thereafter held by several legal titles.

The proof established the fact that Mrs. Kellogg was one of the children of Rebecca J. and James J. B. White, and one of the beneficiaries in the deed of Harry R. W. Hill and wife, and that her mother died in the year 1880 or 1881. The effect of the other material evidence is sufficiently stated in the opinion of the court.

Upon final hearing the Chancellor rendered a decree denying any relief to the complainants in the original bill, but granting the full relief prayed for by the complainant in the cross-bill. From this decree the complainants, Mason W. Kellogg and others, appealed.

*Bowman & Bowman,* for the appellants.

The note and trust-deed in issue were executed in August, 1880, and the Code of 1880, manumitting married women, went into effect November 1, 1880, so that Mrs. Kellogg at the time was under the restrictions of the Code of 1871 as to this contract.

The uniform decisions of this court, extending over a period of years, is that a promissory note given by a wife is void, unless the consideration was for family necessaries and plantation supplies, or money actually used for those purposes, and the burden of proof is on him who seeks to charge her estate.

The title or *jus desponendi* of a wife is governed and controlled by the statute, or by the extent of power granted by the will or deed of settlement under which she claims. It matters not whether there is a trustee or no trustee, the existence or absence of

one does not in the least affect the extent of her contracting capacity. In determining the liability of a married woman to charge her separate estate the question is, does the deed or will under which she claims give her absolute, exclusive, and unrestricted dominion over the property? If there is restriction in the deed or will, to the extent of the restriction she is disabled to fix a charge or liability. This is the doctrine recognized by this court in *Frierson* v. *Williams*, 57 Miss. 451.

In the case just quoted the separate estate of Mrs. Williams, which was sought to be charged, was derived under the devise of a will that the "bequest was to her sole and separate use, in which her husband should have no right or interest."

In *Futch* v. *Jeffries*, 59 Miss. 506, the devise was by the husband to the wife during her life, with power to sell for her support and maintenance, and what remained after her death to be equally divided among his legal heirs, and this court held that the bequest created in a *feme covert* heir an estate, limited by and subject to the restraints of the married woman's law as to her contracts. The court in *Futch* v. *Jeffries*, 59 Miss. 512, says: "The estates of married women, with respect to which they could act as if unmarried prior to the Code of 1880, were those settled on them in terms, which excluded the marital rights of the husband and vested estates to the sole and separate use of the wife to the exclusion of the husband."

There are no "terms" in the Hill deed which settles on the children of Mrs. White an estate with the absolute *jus desponendi;* there is nothing in the terms which excludes the husband. The life estate of Mrs. White terminated by her death in 1877. Did she have any power to charge the corpus of the property? Not by the terms of the deed. She had no estate in these lands whatever that could in any manner have been charged. She could not control the disposition of the property during life. Strictly speaking, she had no right of property in the land, but only its products. The rents and productions were settled on her and nothing more. This is not done by the deed as to her children after her death. There is no provision there as to whom they shall

exclusively go after she dies, but the deed leaves that to the law and not the grantor. We think that clearly the estate of Mrs. Kellogg in these lands was subject to what is called the married woman's law.

*Calhoun & Green,* on the same side.

Regarding the whole case as narrowed down to the question, what estate did Mrs. Kellogg receive under the trust-deed of H. R. W. Hill to James J. B. White and Isaac H. Hilliard, trustees, we will proceed to consider that question.

It must be carefully noted at the outset that the deed only conveys to the "*separate and exclusive use*" of the said Rebecca J. the crops, etc. As to the land, she and the children of J. J. B. White were to be "equitable tenants in common in fee," and she was to own that separately only in case she survived all the children.

Now, it is not true that because a wife owns an equitable estate in property it excludes marital rights and becomes independent of the married woman's law. To effect this result, the estate must not be equitable merely as regards title, but also "as descriptive of the kind of estate with which courts of chancery empowered a married woman to deal independent of her husband," and such estates to be such, must have been "settled upon them *in terms* which excluded the marital rights of the husband and vested estates to the sole and separate use of the wife, free from the control of the husband." *Futch* v. *Jeffries,* 59 Miss. 512.

Any such "terms" are wanting in the deed under consideration. And to emphasize the significance of the word "terms" used in the decision just cited, it cites as authority *Frierson* v. *Williams,* 57 Miss. 458, in which case the will, without the intervention of a trustee, devised the estate to the testator's daughters in these unmistakable "terms," "to their sole and separate use, in which their husbands, respectively, shall have no right or interest."

In this case the court holds that there is no distinction in reference to the wife being or not being governed by the married woman's law between legal and equitable estates. It holds that the wife "is never obliged to look to the statute for her power to con-

tract and charge her estate, except when she must look to it for her title."

In *Andrews* v. *Jones*, 32 Miss. 274, it is held that "the wife is to be regarded as a *feme sole* in regard to the disposition of her separate estate, only so far as she has been made so by the instrument creating the estate."

In *Stewart* v. *Ross*, 50 Miss. 793, quoting the language of the court in *Bank* v. *Williams*, 46 Miss. 632, it is held that "a married woman, unless the instrument creating her estate otherwise provides, holds her property, whether owned at her marriage or acquired since, as if the 23d, 24th, 25th, 26th, and 27th articles of the code, pp. 335–6—the married woman's law—were embodied in the instrument conferring the property on her." To the same effect are *Staton* v. *New*, 49 Miss. 308 ; *Carey* v. *Dixon*, 51 Miss. 600 ; *Doty* v. *Mitchell*, 9 S. & M. 435 ; *Musson* v. *Trigg*, 51 Miss. 172 ; Perry on Trusts, § 32 ; 2 Kent's Com., 2d ed., 162.

An examination of the instruments which passed under review in the cases cited will the more plainly show the intent to decide that the statute was excluded from operation only where there was a distinct expression of design to deprive the husband of his marital rights as they existed at common law, and there is no intimation of such purpose as to the children in the deed now under examination.

That the husband may be tenant by the courtesy of the wife's separate equitable estate is thoroughly well settled. *Taylor* v. *Smith*, 50 Miss. 50 ; 1 Bis. on Mar. Women, §§ 495–506 ; 1 Sumn. 128 ; 31 Pa. St. 154 ; 13 Pick. 154 ; 1 Md. 54 ; 29 N. J. Eq. 399 ; 30 Ib. 696 ; 14 S. C. 597 ; Boone on Real Property, § 50.

The design in the deed we are now considering was very plainly to do but one thing, viz.: as to the rents and profits and products only, to give the mother, as to her share, the separate and exclusive control. As to the land, the mother, Rebecca J. White, and the children of J. J. B. White were simply equitable tenants in common in fee by the express terms of the deed, and this equitable tenancy was changed after the death of the father by agreement and formal division into several estates in fee simple.

It would seem to follow that Mrs. Kellogg—

1. Owned the land subject to the operation of the married woman's law.

2. That she could not bind it further than its usufruct to secure even her husband's debt.

3. That she could not bind it to secure her own debt unless it was such a debt as she was authorized by statute to contract.

4. That she could not bind it or its income to secure the debt of M. B. Kellogg, who was not her husband.            :

If she held it under the married woman's law, authorities need not be cited to sustain the other three propositions.

*J. C. Prewett* and *Henry & Campbell,* for the appellees.

1. We think we can safely say that the case of Robert O. Kellogg has been clearly made out. Mrs. Kellogg's liability has been fixed under the most rigid construction of the married woman's law.

If we get nothing else, then we should surely be allowed to subject the undivided one-sixth interest of S. H. Kellogg. Even if the note and deed of trust were utterly void as to Mrs. Kellogg, S. H. Kellogg would still be bound. *Foxworth* v. *Bullock,* 44 Miss. 457.

2. We now come to the second branch of this case, and that is involved in the question whether Mrs. Kellogg's power of charging or alienating the Choctaw place was derived from the statutes of this State constituting what is known as the married woman's law, or, was her power over the same governed and regulated by the declaration or deed of trust?

This document can only be fully understood by a perusal of it. We think it made Mrs. White and her children equitable tenants in common (including Mrs. Kellogg) whether she was born or not when said instrument was executed, and if Mrs. Kellogg held the property as an equitable trust estate her power of disposing of it was absolute and unrestricted. It is well settled in this State that the statutes on the subject of the property of married women do not fix and regulate the powers of *femes covert* as to equitable separate estates held by them. *Musson* v. *Trigg,* 57 Miss. 172; *Doty* v. *Marshall,* 9 S. & M. 435; *Montgomery* v. *Agricultural Bank,*

10 S. & M. 566 ; *Andrews* v. *Jones,* 32 Miss. 274 ; *Black* v. *Gross,* 36 Miss. 532, as well as other cases.

This court says, in *Frierson* v. *Williams,* 57 Miss. 451 : " The statute was designed, not to restrict, but to enlarge the right and power of married women as to property owned by them at the time of their marriage or subsequently acquired. It secured her property to the wife by cutting off the marital rights of the hus-band as they existed at common law. It was designed to operate only when by the terms or mode of the acquisition of property by the wife the husband would acquire either an entire or a par-tial interest in the property ; and as to that property to fix and secure the rights of the wife and her dominion over it. It was no part of the purpose of the statute to interfere with the recog-nized power of the wife to acquire and hold a separate estate under instruments creating it according to the rules then recognized by courts of equity. As to such separate estate the statute is silent, and left the wife's interest to be fixed and regulated according to the terms of the instrument."

The question next arising is, Does the instrument or declaration of trust give Mrs. Rebecca J. White a separate equitable estate, or an estate to her sole and exclusive use? For it will be conceded that whatever was the character of the estate conferred on Mrs. White, the same was conferred on her children, one of whom was Mrs. Kellogg, and all of said children and Mrs. White being made " equitable tenants in common." That such an estate was invested in Mrs. White by the instrument there can be little doubt, for the instrument abounds in such phrases as these, which are put by Judge Story as criteria to determine the question (2d Story Eq. Jur., 13th ed., 711), " to her separate use or disposal," " to her sole use and benefit," " for her separate use or for her own use and at her own disposal," or " to her use during her life independent of her husband," or " that she shall enjoy and receive the issues and profits." In all these cases the marital rights of the husband will be excluded, and the property will be for her exclusive use.

The only remaining question that can possibly arise is whether, if Mrs. White took an equitable trust or separate estate (as she cer-

tainly did) along with Mrs. Kellogg, as one of her children, upon the subsequent marriage of Mrs. Kellogg the marital rights of her husband, S. H. Kellogg, were excluded, and could Mrs. K. deal with her portion of the estate as a *feme sole?*

This is a mere legal question, which is settled, we think, in the affirmative. See 2 Story Eq. (13th ed.) 713, § 784.

ARNOLD, J., delivered the opinion of the court.

The record does not show such use and disposition of the money borrowed on the note and deed of trust made by L. A. Kellogg and her husband as to bind her separate estate. Under the law, as it existed at the date of the note and deed of trust, the incapacity of a married woman to borrow money and the exemption of her separate estate from liability for borrowed money, unless it was devoted to some of the purposes for which she was enabled by statute to contract, are too well settled to admit of discussion at this day. The deed from H. R. W. Hill and wife did not vest in L. A. Kellogg an estate for her sole and separate use free from the control of her husband, and her power to charge her interest in the land conveyed by that instrument "is determined by the statute, and not by the general principles of equity in reference to the equitable estates of married women." *Futch* v. *Jeffries*, 59 Miss. 506.

The land in controversy was the separate estate of L. A. Kellogg, subject to the married woman's law, and not an equitable estate independent of the statute. But the interest acquired by S. H. Kellogg in the land by the death of his wife, after he signed the note and deed of trust, upon familiar principles inured to the benefit of the beneficiary in the deed of trust, and is subject to sale for the payment of the note.

*The decree is reversed and the cause remanded, with directions to the court below to proceed in accordance with this opinion.*